May it please the Court, Evan Howes, for the defendant appellant, Carlos Urbina-Fuentes, who honors the Florida burglary statutes as brought because it includes unlawful entry into the curtilage. Under Florida law, a person who unlawfully enters onto the curtilage of a home is guilty of burglarizing a dwelling just as much as a person who unlawfully enters the home itself. The Florida Supreme Court has made absolutely clear that there's no separate crime called burglary of the curtilage. So the fact that this statute is indivisible means that all of the parties below incorrectly assumed that Mr. Urbina-Fuentes' prior Florida burglary conviction would have resulted in a higher guideline range under the 2015 edition of the guidelines that applied at the time of his illegal reentry offense. It also means that the use of the 2016 guidelines, which produced a higher range ultimately, violated the ex post facto clause. So we know we have an error here. The question is whether or not the remaining three prongs of plain error review are satisfied. We think that they are for three reasons. First, because the error is not subject to reasonable dispute after it has anchored its sentence to the incorrect range, and it did so without considering the correct range. But didn't it the judge say he would have reached the same sentence without? Yes, Judge Clement. Using the correct guidelines. Yes, Judge Clement. But that doesn't control in this case, and so that speaks to the effect. Guess what happens when it goes back. Well, Your Honor, I don't think that's necessarily correct. There are several cases in which a judge, whether under harmless error review or plain error review, said I would give the same sentence, but this Court found that it couldn't be entirely confident that the district court would give the same sentence or give the same extent of a variance if it's apprised of the appropriate benchmark, the appropriate guidelines range, and that the defendant did receive a lower sentence. It's happened often. In fact, I can cite specifically to United States v. Martinez Romero in a case, and that was, of course, under Rule 52a. It was a harmless error case, but the judge said I would give, three times, in fact, said I would give the same sentence or a sentence within this range, and then the case went back, and Mr. Martinez Romero received, I believe, a 12-month lower sentence. So district courts do change their minds, and they are affected by the guidelines, and that's the premise of Molina-Martinez. And what do you think the sentence should have been? Well, Your Honor, it's — I don't think that it's appropriate for myself to judge what the sentencing factors are. The United States Supreme Court in Gall, and prior to that in Williams, said that it is specifically within the purview of the district court to weigh the sentencing factors and determine whether or not — where a sentence is appropriate in light of those factors. And, of course, one of those factors is the guidelines range. And what range would you — do you contend was appropriate? Your Honor, the appropriate range in this case was 15 to 21 months, based on a guidelines range — or, excuse me, based on an offense level of 10, criminal history category of 4. And to turn to the plainness prong, if the Court has any questions on that, I think it's very clear that the error here is plain. We know that the Florida burglary statute is not generic because this Court said so, and it's 2007. The government's conceded it, that there was an error. Your Honor, the government has conceded error. It hasn't necessarily conceded plainness. I'm not sure if the government's going to maintain that position after, you know, there's been several cases in this Court, Harold for one, and Tanksley, and Hinkle, and Gomez-Perez, where this Court has time and again recognized that Mathis abrogated its prior decisions, applying the modified categorical approach based on allegations listed in the indictment. And so the exact same thing applies here. It is true that this Court has twice before at least looked at the indictment in a Florida burglary case to find generic burglary, but of course, based on the indivisibility of the statute, which is clear and obvious after Mathis, and in light of the Florida Supreme Court's opinion in Baker v. State, which Gomez-Guerra cited in that 2007 opinion, it's very clear that the Court can no longer look at the charging instruments in this case. So we do have a, we do believe plainness is satisfied here. Turning to the prejudice prong, Judge Clement, it is true that the district court did say that it had looked at the guidelines range above and below the incorrect range, and that it would give the same sentence, or it would give the same sentence irrespective of that range. But that does not overcome Molina-Martinez, because in Molina-Martinez, the Supreme Court, Justice Kennedy was very clear. He said there might be a case where the idea that the use of the incorrect guidelines range would be, is affect substantial rights, would be rebutted. But in order for that to happen, two things must happen. The record has to make clear that the judge based the sentence on independent of the guidelines. And the record must also show that the judge considered the correct range. And here, all the evidence in the record suggests that the guidelines did influence the sentence. The clearest evidence is the Court's selection of the 30-month term within the erroneous guidelines range. And this Court, time and again, has recognized that that is compelling evidence of the influence of the guidelines. The statement itself also makes clear that the district court was basing its comparison against the range above the erroneous guidelines range and the range above. And so those ranges were also products of the incorrect range. You said the range above and the range above. You mean the range below. The range above the erroneous range and the range below. I'm sorry, Your Honor. So the court basically looked at what is the range above this and what's the range below this, and I'm going to go ahead and sentence in the range. And so, I mean, that clearly shows the district court is using the guidelines, the erroneous guidelines, as it turned out, range as a benchmark or a barometer for its sentencing decision. And that is — and it's also true that the absence of evidence here is telling. The court did not suggest that it chose 30 months for reasons that were unrelated to the guidelines, like to give an incremental sentence, for instance. And it certainly eschewed any reliance on the prior arrest incident for unlawful killing. And then finally, of course, the court never considered the actual range that would have applied that 15- to 20-month range. So all of this shows that the commission's advice through those guidelines was the relevant benchmark for the court's sentencing decision in this case. So if there are no further questions on the third prong, that brings us, of course, to the fourth, to the discretionary prong. And we do think that it is appropriate for the — or for this court to exercise its plain error discretion to correct the error in this case. Have you read Judge Higginbotham's opinion in the Ellis case about the fourth prong? Yes, Your Honor. It's a good opinion. It is a good opinion. And I think the — there is an idea in this court's jurisprudence that plain error should be rare in the Supreme Court's jurisprudence as well. But I think what the court is missing in some of its cases is that plain error is rare, because I think the sample size that the court is looking at isn't exactly the right sample size to look at. I would point the court to — and this is the Penn site — is that the William Martinez opinion at page 1348. In that portion of the opinion, Justice Kennedy talks about sentencing commission statistics for 2014. There were 75,000 sentencing cases in 2014. Only 620 were remanded based on statutory and guidelines errors. So let's assume that three-quarters of those were guidelines and that even three-quarters of those were plain error cases. That would leave us in 2014 with 348 cases remanded, and that's less than half of 1 percent. That is 0.4 percent of all of the cases that were sentenced in 2014 that would have been remanded on plain error. And that's being generous with the statistics. So I do think that when you expand to the universe of all the sentencing cases, and not just the cases that appear in the reported opinions, then plain error is rare, as it should be, even in the sentencing context. And when turning to this specific case, this isn't just a guidelines error, Your Honors. This is a constitutional error. Our Constitution says that fundamental fairness requires that a criminal defendant be punished according to the law as it existed at the time of his offense. And at the time of Mr. Abinafuentes' offense, of course, the existing law was the 2015 guidelines. So because of the error here, Mr. Abinafuentes was punished according to law that didn't exist at the time he committed his crime. What's the disparity? Is it 9 months, or what is it here? Your Honor, the disparity here is 9 to 15 months. I think it's, to be fair, fair to the district court, I believe it would be a 9-month disparity because the district court did choose the top of the guidelines range. The top of the guidelines range that's correct is 9 months below that. So, but we do think that 9 months is significant. And just to look at the higher level of generality, because I know that Your Honor has spoken, Judge Smith, in the Escalante-Reyes dissent and in other places, that plain error review, especially on the fourth prong, is focused on the judicial proceedings as a whole, not this particular judicial proceeding. And I think that's right. So sometimes I think the particular circumstances of the case are related to the defendant's individual case. But if you look here, we've got an ex post facto violation. It is fundamentally unfair, our Constitution says, to punish an individual more harshly based on law that didn't exist at the time that he committed his crime. And so at the highest level of generality, we have a serious effect on the fairness of proceedings as well as the public reputation, which several commentators, commentators, excuse me, I'm, my, pardon me. It's okay. Take your time. Several commentators have recognized that a constitutional error is one that affects the public reputation of proceedings. So even if the guidelines aren't themself enough, the constitutional nature of this error changes the analysis here. We think it changes it in favor of correction. The fact that the constitutional error occurred here. When does your client get out of jail? Your Honor, our client gets out of jail right now. The BOP website says in October of 2019, next year. So he would receive a benefit from a ruling in his favor in this case. And another point in favor of correction, Your Honors, is that this is a constitutional error, but it does occur in the context of the guidelines as we've been discussing. And that makes it even more serious. The purpose, as everyone recognizes, is that the purpose of the guidelines is to reduce disparities between like defendants. And as Justice Breyer recognized at the Rosales-Morales argument, the essential function of the guidelines is to direct courts to the Sentencing Commission's expertise. And the way that it gains that expertise is the numbers, the empirical evidence. When there is a sentence that was incorrectly calculated and then it remains there, the statement of reasons gets submitted to the Sentencing Commission. And that confounds the empirical evidence that the Sentencing Commission bases its expert advice on. And so all that is to say that when there is a sentencing guidelines error, there is a serious effect on the structural integrity, and this goes to the integrity pillar of plain error review, of the sentencing process. And I think that that reasoning is sound. And who better than Justice Breyer to know what the purpose of the guidelines were, of course. Should we, in your view, withhold a decision in this case awaiting, I guess it would be two months at most, awaiting a decision in that case to see what they say about the fourth prong? Your Honor, I don't think that you need to in this case. We do contend that under even this Court's traditional test, which looks at the degree of the error and the circumstances of the particular case, I think that reversal is clear here based on that extra, not necessarily clear, but it's appropriate, pardon me, based on the constitutional nature of this error and the effect that it had on these particular proceedings. This is a 42 percent increase when you look at this particular proceeding. Nine months out of an increase from 21 to 30 is 42 percent. So we have an extremely disproportionate impact on this particular sentence. And I think that's very important in looking at the overall effect on the fairness and integrity of judicial proceedings in this particular proceeding in general. And the last point, Your Honors, is that the government's main point, counterpoint, is simply that Mr. Urbina-Fuentes has a criminal history and it's got some violent conduct in it. It's a misdemeanor battery conviction. It's the burglary conviction that formed the basis of the controversy here. The sentences in both of those cases were less than a year. In fact, the battery was first a probated sentence, and then eventually he got revoked and he got less than a year. So the — Kennedy. Well, is this error plain at the trial court level or after it was — after the complaint because of the law development, after it was on appeal? Boutrous. No, Judge Higginbotham, this one was plain at the time. Kennedy. I'm sorry? Boutrous. This one was plain at the time of the sentencing proceeding. There's no excuse. We should have recognized it. We should have raised it. Mathis had been out. Gomez-Guerra had been out. And it's pretty plain on the face of the statute. So we should have raised it. But that is why we're here on plain error review, and that's why it's our burden to — Kennedy. Who was defending the case? Who was defending the — I mean, who was — who would — either way, who was defending the case at trial? Boutrous. Your Honor, it's a trial lawyer in our Laredo division named David Castillo. He's a fine lawyer. He missed it in this case. But so did the probation officer. So did the government. And that's why we're subjected to that stringent — Kennedy. Judge Cajun, I think, was a district court judge, wasn't he? Yes, Your Honor. And if there are no further questions — Cajun doesn't miss much, I must say. Well, this wasn't Judge Cajun, Your Honor. This was Judge — visiting Judge — All right. Well, I thought it was Judge Cajun in this case. Visiting Judge from Mississippi, I believe, or maybe Louisiana. Judge deGravier, I'm going to butcher that name. Okay. Yeah. Okay. I looked at the wrong sheet. But if there are no further questions, I reserve — Yes, you've saved time for a moment, Mr. Howells. Thank you. Thanks for taking extra of the Court's time. All right. Senator Alanis. May it please the Court. Amy Alanis for the government. We have conceded the first prong plane error here because the government conceded in the 11th and the 8th Circuit that this particular Florida burglary statute was no longer divisible post-Mathis. So we're not contesting number one. Number two, however, this Court has held many times that an error won't be plain and obvious if it requires an extension of precedent or if this Court has not ruled on that particular issue. Or if there's a tortuous path to figure out what the right answer is. Yes, Judge. As you said in your — It's supposed to be so plain that it jumps off the page at everybody, but this one didn't do that. Yes, Judge. As you said in your dissent in United States v. John, judges are not like pigs hunting for truffles, and that's pretty much what that would require. Actually, of course, that language came originally from Justice Scalia, and it was not properly attributed to him as it should have been in that opinion. Yes, it was. So I want to sort of liken that. I mean, Mathis is a difficult case. We're fighting that battle with so many different statutes in so many different states. It really does seem a bit like a truffle hunt to ask a district — a visiting judge down in Laredo to have read everything that's going on in the Eighth Circuit and the Eleventh Circuit about a Florida burglary statute. So that's our position on prong number two. On prong three, it is true that the district judge did have some alternate language. He said, I've looked at a range before and below, and I'm going to go with the guideline range. That comment was made in the context of the fact that the prosecutor had asked for an upward departure based on an underrepresentation of this man's criminal history. And the defense lawyer was asking for a downward departure, which is sort of on, I guess, humanitarian grounds. And so this Court has said, quoting the Supreme Court in Molina-Martinez, where the record is silent as to what the district court might have done had it considered the correct guidelines range. The court's reliance on an incorrect range alone suffices to show effect on substantial rights. So we really haven't contested the third prong in this case. Now, that brings me to the fourth prong. It's still the law in this circuit and in the Supreme Court that the appellant has the burden on the fourth prong, and he simply hasn't met it here. He's saying my sentence may have been a little bit too long. And the sentence he got is nine months above the top range that would have applied to his case. And it's pretty obvious that this particular district judge was looking at top ranges. He not only gave a top-range sentence here, he gave him a top-range revocation sentence to run consecutively to this sentence. So he thought he was a bad guy. So in going through the different fourth prong factors that this court has considered, I've just addressed the first one, the degree of error or the disparity in sentence. It's nine months. Now, the cases, there's a lot of different cases with a lot of different outcomes. There are some where they found the fourth prong met where there was just a couple of months disparity. There are other cases when the fourth prong wasn't met where there was a much greater disparity. I would say generally, nine months is kind of toward the low end on the disparity range. Number two, recidivism. This guy is a recidivist. Not only, I mean, he's a repeat illegal re-entry offender. And of course, he had a pretty substantial and violent criminal history back in Florida. He not only came back to the United States he did it while he was still on supervisor lease for his prior illegal re-entry offense. The next one is that he had no deterrent effect from his prior illegal re-entry sentence, which is 28 months. And that's something that the prosecutor pointed out. We really need something in excess of 28 months because 28 months made no impression on him whatsoever. Six, or next, this sentence is reasonable. It's within the statutory range. And I don't think there's been any argument made really that it was substantively unreasonable. It simply was not. Again, the district court imposed a high-end sentence with respect to this new offense and with the revocation sentence. And finally, although I don't think the judge has stated alternative rationale perhaps rises to the level of satisfying the third prong, it is a factor in the fourth prong, I think. When you're talking about the, you know, whether it seriously affects the fairness, integrity or public reputation of judicial proceedings, I think the common man would look at this and go, but the judge said he's gonna give this, then it's anyway. So in light of all these factors that are against the appellant on the fourth prong, the government believes he simply hasn't met his burden on the fourth prong. All right, thank you, Ms. Alaniz. Thank you. I'll ask you to save time for rebuttal. Just a couple of points, Your Honors, in response. Judge Smith, I understand that the plainness prong doesn't accept a torturous path in certain cases, but we do not have a torturous path here. This court could say in two sentences that the Florida Supreme Court has held that burglary of the curtilage is burglary of the dwelling. It's held this specifically, and that's all the court needs to do is follow what it says. And that's what Mathis tells us, plainly, on the front of the opinion. Justice Kagan said a court need only do what the state court says. And it's important in this case, I think, that Gomez-Guerra cited the Baker case that we're talking about, and it specifically referenced that. And it cited several opinions that have applied the Florida burglary statute to taking a bicycle from the back of a home off of the curtilage and everything like that. So the error here is quite plain in light of the Supreme Court's clear admonition and clear statement of what the indivisibility test is. There is no torturous path. The government mentioned the revocation sentence, and I do think that's important in the sense that it, on this record at least, takes care of the recidivism concern that the court looks at under the fourth prong, that this individual's recidivism was taken into account by the district court, and the district court decided that 14 months consecutive was appropriate to account for that recidivism. So it would be strange for the court of appeals later to uphold the sentence in a completely separate case based on recidivism when the defendant has already had the district court specifically look at that recidivism and punish it accordingly. And the last thing is that the government, you know, it specifically invoked the bad guy test. That is not the Supreme Court's formulation of the fourth prong, and the reason it's not is because the Supreme Court's formulation looks at the error. It is whether the error affected substantial rights, the integrity of the process, or the judicial proceedings seriously affected. And it is not the case that the test looks at whether or not the sentence was ultimately fair, whether or not, despite the error, the sentence was fair. Well, Omar Rehman, what could the district court do in terms of a sentencing? Well, Your Honor, what the district court would do in terms of- Could do. The district court could vary upwards nine months and explain why a variance is appropriate, why Mr. Urbina-Fuentes' history and characteristics, why his criminal history, which the district court did not mention at the original sentencing at all. Ends up justifying a nine-month departure above the- A nine-month sentence is explainable. Why would the result here offend the institution of justice? Well, again, Your Honor, our point is, I don't want to fight back- If it did, maybe that's just a wanton explanation. I do want to fight back a little bit on the idea that we are just looking at the result, the sentence. We are looking at the error and its effect on the fairness of the judicial proceedings. True enough, true enough. And it is literally, ultimately, a constitutional dimension. Yes, Your Honor. But I think that what we can look at is, that is precisely why it affects- But not every constitutional error would meet the fourth prong, would it? Absolutely. Cotton is a perfect example of that. Not submitting an essential element to the jury, and then that error was held not just. Some of the proceedings blow that would, the error was such that, given the sum of the proceedings blow, that it would offend the principles of justice. We're looking beyond this case to leave it at be. I think that's right. I think that Puckett is an example of a case where there were countervailing circumstances. Certainly, as Justice- All I'm suggesting to you, the fourth prong in the context of sentencing is most difficult, as everyone present here is quite aware. I go back to Judge Smith's question about waiting for some Supreme Court guidance about this. It's difficult for us lower court inferior judges to give definitive answers to those kinds of things about what is shocking and what is so plain. If we might get some more light, I guess. I see my point. You can answer, sure, no problem. Judge Aginbosom, I agree. I don't, I would reject the idea that the characterization of this court is inferior or incapable of- Well, I was using the constitutional language. Understood, but I do think that you're right. You can wait on Rosales-Morales if you want that guidance, but for the reasons we've stated, you can, of course, reverse the sentence based on the test that has been applied in the past, but presaging what the Supreme Court is gonna say, especially in a case like this one, where what is really in play in Rosales-Morales is what test do we apply under the fourth prong. That's what the government's been arguing. It argued here and then in the Supreme Court that the court can look at the substantive reasonableness of a sentence. Of course, the Supreme Court has said in Williams and Gall that the appellate court should not be doing that, so there's some tension there, and the Supreme Court will decide that tension, hopefully, for everybody, but we do think, for the reasons that have been stated, that the district court's decision was an error, it was plain, it affected substantial rights, and that this is one of those cases where it's appropriate to correct it. Thank you, Your Honor. Thank you, Mr. Howe. Those are your cases under submission.